UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:20-CR-35-REW |
| v. ) | |
| ) | OPINION & ORDER |
| REX ALLEN FOX, JR., ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Rex Allen Fox, Jr., *pro se*, moves for sentence reduction under 18 U.S.C. § 3582(c). *See* DE 59. He argues that the Court should modify his sentence on account of his mother's breast cancer, his rehabilitative efforts, and the extent of his remorse. *See id.* The Government filed a response in opposition to Fox's motion, *see* DE 61, and Fox did not file a reply. Because Fox has failed to exhaust his administrative remedies or establish circumstances that warrant a sentence reduction, the Court DENIES DE 59.

I.  **BACKGROUND**

In 2020, Fox was indicted for "conspir[ing] with others to knowingly and intentionally distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance," in violation of 21 U.S.C. § 846. *See* DE 1. Fox pleaded guilty to the sole count charged in the Indictment, *see* DE 38 ¶ 1, at 1, and the Court accepted his plea, *see* DE 40. On April 4, 2023, the Court sentenced Fox to a 95-month term of imprisonment, with a three-year term of supervised release to follow. *See* DE 57 at 2–3.

Two months ago, after serving approximately 23% of the sentence, Fox filed the instant motion for compassionate release. *See* DE 59. In it, Fox states that his 76-year-old mother is

suffering from stage four breast cancer and in need of care. *See id.* He also notes that he has worked hard to better himself while in prison, is truly remorseful for his crimes, and is "dead set against drugs." *See id.* In further support of the motion, Fox attached a number of certificates indicating his completion of a range of programming. *See* DE 59-1.

The Government responded in opposition to Fox's motion, initially noting that he has failed to exhaust his administrative remedies. *See* DE 61 at 2. The Government then proceeded to address the merits of Fox's motion, arguing that he has not demonstrated extraordinary and compelling circumstances, *see id.* at 2–5, and that the § 3553(a) factors do not support early release, *see id.* at 5–6. Although the Court gave Fox the opportunity to file a reply, he opted not to do so. *See* DE 60. As such, the matter is now ripe for the Court's decision.

## II. LEGAL STANDARD

Courts may not generally "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Congress has, however, established certain narrow exceptions to this rule. One such exception permits courts to:

> [R]educe the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if . . . extraordinary and compelling reasons warrant such a reduction . . . and . . . such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).[1] By separate statute, Congress tasked the Sentencing Commission with identifying "what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t); *see also id.* § 994(a)(2)(C) (directing the promulgation of general

---

[1] This is a provision that Congress broadened (through a direct federal court portal) as part of the First Step Act of 2018, a criminal justice measure passed on December 21, 2018. *See* Pub. L. No. 115-391, 132 Stat. 5194.

2

policy statements regarding the use of the § 3582(c) sentence-modification provisions). The Sentencing Commission has since defined extraordinary and compelling reasons, *see* U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b) (U.S. SENT'G COMM'N 2025), and explained that courts may only grant a sentence reduction if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community," and the reduction is otherwise "consistent with this policy statement," *Id.* § 1B1.13(a); *see also United States v. Jones*, 980 F.3d 1098, 1104 (6th Cir. 2020).

Until 2018, only the Bureau of Prisons ("BOP") could move for compassionate release. *See Jones*, 980 F.3d at 1104–05. The First Step Act changed that by allowing defendants to circumvent the typically languid BOP and petition courts directly for compassionate release. Pub. L. No. 115-391, 132 Stat. 5194; *see also Jones*, 980 F.3d at 1104–05. However, a defendant may only do so (1) after "fully exhaust[ing] all administrative rights to appeal a failure of the [BOP] to bring a motion," or (2) upon "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).[2]

Since the First Step Act's enactment, the Sixth Circuit has established a "three-step inquiry" governing prisoner-initiated motions,[3] directing courts to consider (1) whether "extraordinary and compelling reasons" support a reduction, (2) whether a reduction would be "consistent with 'applicable' Sentencing Commission policy statements," and (3) whether the

---

[2] While § 1B1.13 previously only applied to BOP-initiated requests for compassionate release, *see Jones*, 980 F.3d at 1109–10, the Sentencing Commission recently amended its policy statement to similarly govern motions filed by defendants, *see* U.S. SENT'G GUIDELINES MANUAL § 1B1.13(a).

[3] The Court may deny a compassionate release motion "based on the defendant's failure to meet any one of [the] criteria." *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021) (citing *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021); *United States v. Ruffin*, 978 F.3d 1000, 1006 (6th Cir. 2020)). Granting release, though, requires a positive finding at each step. *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021) (citing *Elias*, 984 F.3d at 519) ("[W]here the district court grants a motion for compassionate release, it must of course address all three steps").

§ 3553(a) factors favor release. *Jones*, 980 F.3d at 1101 (citing *Ruffin*, 978 F.3d at 1003–06). In any § 3582 action, the defendant bears the burden of demonstrating his eligibility for a sentence reduction. *See, e.g.*, *Ruffin*, 978 F.3d at 1008–09.

Under the current policy statement, "extraordinary and compelling reasons" includes certain family circumstances, such as:

> The death or incapacitation of the caregiver of the defendant's minor child . . . , [t]he incapacitation of the defendant's spouse . . . when the defendant would be the only available caregiver . . . , [t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver . . . , or [t]he defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver . . . .

*Id.* § 1B1.13(b)(3)(A)–(D). Additionally, there is a "catchall" category by which a defendant may establish extraordinary and compelling reasons if his circumstances "are similar in gravity to," but still distinct from, the specific categories set out in § 1B1.13(b). *Id.* § 1B1.13(b)(5). Congress has emphasized—and the Sentencing Commission has reiterated—that "[r]ehabilitation of the defendant alone" is never "an extraordinary and compelling reason." 28 U.S.C. § 994(t); U.S. SENT'G GUIDELINES MANUAL § 1B1.13(d). Rehabilitation may, however, be considered alongside other circumstances. *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.13(d).

### III. ANALYSIS

#### A. Failure to Exhaust Administrative Remedies

Fox has not put forward any evidence suggesting that he either (1) fully exhausted all administrative rights to appeal the BOP's failure to bring a motion on his behalf, or (2) has waited at least 30 days since requesting that the warden of his facility bring a motion on his behalf. *See* DE 59; 18 U.S.C. § 3582(c)(1)(A). Indeed, the Government notes that "BOP has no record of [Fox] submitting any request." DE 61 at 2. As a result, Fox's motion is not properly before the

4

Court, and it must be denied on that basis. Nonetheless, for purposes of completeness, the Court will address the underlying merits of the motion, which would not, assuming exhaustion, yield relief.

### B. Failure on the Merits

On its merits, Fox's motion fails for two independent reasons. First, he has not established extraordinary and compelling reasons that warrant a sentence reduction. Second, he has not established that the § 3553(a) factors favor his release. As a result, even if Fox's motion were properly pending, the Court would deny.

### 1. Defendant Has Not Established Extraordinary and Compelling Reasons

Fox argues that his mother's stage four breast cancer justifies a sentence reduction. To be sure, a close family member's serious and tragic cancer diagnosis *can* satisfy § 1B1.13(b)(3)'s requirements. However, in order to fully satisfy § 1B1.13(b)(3), Fox must also prove that his mother's disease has left her incapacitated and that he is the sole available caregiver. Because he has done neither, he has not established an extraordinary and compelling reason for release.

In assessing incapacitation, courts consider whether a person is "completely disabled and totally bedridden." *United States v. McKenzie*, 636 F. Supp. 3d 892, 898 (E.D. Tenn. 2022) (finding defendant's fiancée was not incapacitated despite claims she could not lift her disabled son, because evidence did not show she was completely disabled, totally bedridden, or unable to care for her son in at least some capacity); *see also United States v. Stanton*, No. 6:21-CR-19, 2025 WL 1178583, at *3–4 (E.D. Ky. Apr. 23, 2025) (finding defendant's wife was not incapacitated despite her cancer diagnosis, in part, because she was not "confined to a bed or chair, requiring continuous, around-the-clock care"); *United States v. Carter*, No. 19-20195, 2025 WL 28442, at *3 (E.D. Mich. Jan. 3, 2025) (finding defendant's wife was not incapacitated when suffering from

left-side paralysis after a stroke because nothing suggested that she "requires anything like intensive, around-the-clock care"). Fox has not put forward any facts regarding the extent of his mother's condition, and as such, the Court cannot conclude that she meets this definition of incapacitation. *See* DE 59.

And in assessing whether a defendant is the only available caregiver for an incapacitated relative, courts look to whether there is any other person who can provide adequate care. *See United States v. Mathews*, No. 2:19-CR-41, 2023 WL 5924411, at *3 (S.D. Ohio Sept. 12, 2023), *reconsideration denied*, No. 2:19-CR-41, 2024 WL 495539 (S.D. Ohio Feb. 8, 2024) (defendant not only available caregiver when she failed to produce evidence that the child's father was not a suitable caregiver); *United States v. Delgado*, No. 3:15-CR-246, 2023 WL 4552890, at *2 (M.D. Pa. July 14, 2023) (defendant was required to establish that all other potential caregivers for minor child were incapacitated). Fox does not describe his mother's living situation, identify her existing caregivers, or make any efforts to demonstrate that he is the sole available caregiver. *See* DE 59. As a result, he has not met his burden. The PIR certainly is indicative of a larger family, cutting against this element. *See* DE 58 ¶¶ 54–56, at 13.

Fox is likewise unable to rely on the catchall category enumerated in § 1B1.13(b)(5) to establish extraordinary and compelling circumstances. Because Fox entirely failed to carry his burden under § 1B1.13(b)(3)—a category directly applicable to the present matter—he cannot now rely on § 1B1.13(b)(5) to argue that his circumstances are "similar in gravity" to one of the categories set out in § 1B1.13(b). That is, Fox's failure to make anything approaching an adequate showing on a directly applicable category defeats the notion that his circumstances are "similar in gravity" to any single category.

6

Although Fox tangentially argues that his rehabilitative efforts warrant release, they do not. Rehabilitation alone is simply not enough to establish extraordinary and compelling circumstances. *See* 28 U.S.C. § 994(t); *see also United States v. Hunter*, 12 F.4th 555, 572 (6th Cir. 2021); *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022). Fox has indeed completed a notable range of programming during his period of incarceration. *See* DE 59-1. But while his efforts may be laudable, they are also expected. Put simply, Fox, as to programming at least, is doing what he should be.[4]

In sum, Fox has failed to establish extraordinary and compelling circumstances that render him eligible for release or a reduction in his sentence within the requirements of § 1B1.13. But even if Fox's claims *were* properly before the Court, and even if he *had* presented extraordinary and compelling reasons to justify his release, the Court would still deny his motion upon consideration of the § 3553(a) factors.

## 2. The § 3553(a) Factors Do Not Favor Release

Fox committed a gravely serious offense. And while his crime might not have involved an identifiable victim, it still inflicted profound and far-reaching harm. Methamphetamine is a uniquely dangerous substance, and those that sell it fuel addictions, destabilize families, strain healthcare systems, and ultimately, corrode society. By trafficking methamphetamine (over five kilograms, no less), Fox knowingly and intentionally injected danger into his community for personal profit. Per the Guidelines, Fox's overall offense level was a 31. *See* DE 58 ¶¶ 16–26, at 5–6.

And as the Court noted at sentencing, this was not Fox's first foray into criminality. His record revealed a litany of previous crimes, including a prior drug-trafficking conviction. *See id.*

---

[4] Regrettably, this contrasts with Fox's disappointing disciplinary record while in BOP custody, which is addressed in greater detail below. *See* DE 61-2.

¶¶ 29–41, at 6–11.  Fox's past conduct resulted in a criminal history category of V, the second highest in the Guidelines.  *See id.* ¶¶ 42–44, at 11.  Collectively, his offense level and criminal history category yielded a recommended and pre-departure sentencing range of 168–210 months. *See id.* ¶ 70, at 15.

But for reasons stated on the record at time of sentencing, the Court departed from the Guidelines and also granted Fox's motion for a further downward variance.  His ultimate sentence, a 95-month term of imprisonment followed by a three-year term of supervised release, was the parsimonious result that adequately served the § 3553(a) factors.  Although Fox now asks the Court to disturb that result, it sees no grounds to do so.

As the Court emphasized in its statement of reasons, Fox's sentence was intended to deter him from committing future controlled substance offenses, to improve his respect for the law, and on the needed level, to protect the community.  These considerations are just as pressing now as they were then.  In fact, Fox's continued abuse of alcohol and drugs while in BOP custody creates added concern, as it indicates that Fox, contrary to his representations, has not yet demonstrated an ability to live within the law.  *See* DE 61-2.  Because the balance of the § 3553(a) factors that justified Fox's original sentence remain unchanged—and in some respects, weigh even more strongly against release—the Court cannot grant Fox's motion.  A reduction now would enervate the purposeful sentence imposed and underserve the statutory aims.[5]

The Court has sympathy for Fox and his mother.  Sympathy is not enough to warrant relief. With that being said, the Court maintains hope that Fox will rejoin society as a law-abiding, sober, and productive person.  Fox certainly has the capacity to do so, just as his mother did before him.

---

[5] And notably, per a review of Kentucky state records, Fox was convicted for the burglary charge pending at federal sentencing.  This, in addition to his criminal history category of V, further bolsters the Court's view that Fox yet presents a danger and is not a suitable candidate for sentence reduction.

For now, however, Fox owes this debt to society. And until Fox finishes serving his sentence, he has not paid the debt.

## IV. CONCLUSION

For the stated reasons, the Court DENIES DE 59.

This the 25th day of November, 2025.

Signed By:
*Robert E. Wier* /s/ REW
United States District Judge